```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
MIC GENERAL INSURANCE COMPANY,                                          :
                                                                        :
                                   Plaintiff,                           :     15-CV-3324 (JMF)
                                                                        :
        -v-                                                             :     OPINION AND ORDER
                                                                        :
SHAWN CHAMBERS, et al.,                                                 :
                                                                        :
                                   Defendants.                          :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/08/2016

JESSE M. FURMAN, United States District Judge:

This action arises out of an insurance policy issued by Plaintiff MIC General Insurance Corporation ("MIC" or "Plaintiff") to Defendant Shawn Chambers ("Shawn") in February 2015. MIC sues Shawn Chambers (who is proceeding here *pro se*); his parents, Ferdinand and Pertie Chambers (who have not appeared in this proceeding); and Wanema Allen ("Allen"), seeking a declaration that it is not obligated to defend or indemnify the Chamberses in a lawsuit that Allen brought against them in state court. MIC now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. Allen cross-moves for partial summary judgment on her counterclaim for declaratory relief regarding MIC's duty to defend and her related request to recover for her attorney's fees and costs in this action. For the reasons that follow, each motion is GRANTED in part and DENIED in part.

## BACKGROUND

**A. The Policy**

At all times relevant to this case, Shawn owned a three-family home located at 913 East 227th Street in the Bronx, New York (the "Insured Property"). (*See* Local Rule 56(a)(1)

Statement Material Facts Supp. Pl.'s Mot. Summ. J. (Docket No. 65) ("Pl.'s SOF") ¶ 1).  Shawn purchased the property from his parents, Ferdinand and Pertie Chambers, sometime between 2000 and 2004, and lived there for approximately three years.  (*See id.* ¶¶ 3, 11).  Shawn moved out in or about 2007, and he has not lived on the property since.  (*Id.* ¶¶ 3-4).  His parents do not live there either; they have lived elswhere in the Bronx for the better part of forty years.  (*Id.* ¶ 12).  Instead, Shawn has rented the property out to tenants, including Allen.  (*Id.* ¶¶ 6-7, 31).

In February 2015, MIC issued an Expanded Homeowner's Policy (the "Policy") to Shawn.  (*See Id.* ¶¶ 1-2, 15; Att'y Affirmation Supp. Default J. (Docket No. 27), Ex. G ("Policy")).  Shawn is the sole named insured; his parents are not named on the Policy.  (Pl.'s SOF ¶¶ 16-17, 19-20).  Under the Policy, MIC agreed to defend and indemnify Shawn against, *inter alia*, a claim or a suit for damages based on bodily injury caused by an accident at the "insured location," which is defined to include the "residence premises."  (*See id.* ¶¶ 22, 24). The Policy defines "residence premises," in turn, as:

> a. The one family dwelling, other structures, and grounds; or
> b. That part of any other building;
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence Premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

(Policy HO 00 03 04 91 at 1).  That definition is modified by an endorsement, which reads:

> For an additional premium, the definition of "residence premises" is amended to include the three or four family dwelling described in the Declarations of this policy.
>
> All other provisions of this policy apply.

(*Id.* at HO 04 44 04 91).  Significantly, the Policy also includes several exclusions.  (*See id.* at HO 00 03 04 91 at 8-9).  Most relevant here, the Policy expressly excludes coverage of (1) any claim arising out of premises owned by Shawn or rented to others that is not an "insured

2

location" (the "insured location exclusion"); and (2) any claim arising out of the rental of any premises other than an "insured location" (the "rental exclusion). (*See id.* at HO 00 03 04 91 at 13). Again, "insured location" is defined to include the "residence premises."

## B. The Underlying Action

On February 25, 2015, Defendant Allen — who lived with her infant son in the basement apartment of the Insured Property — filed a complaint on behalf of her son in New York Supreme Court, Bronx County, against Ferdinand, Pertie, and Shawn Chambers. (*See id.* ¶¶ 31, 36). According to Allen's complaint, her son was injured when a ceiling-mounted radiator fell on him. (*Id.* ¶ 37). On February 26, 2015, MIC received notice of Allen's lawsuit, and on March 3, 2016, MIC disclaimed coverage on the ground that the lawsuit fell within one or both of the exclusions referenced above because Shawn did not reside at the Insured Property. (*See id.* ¶¶ 40-42; Att'y Affirmation Supp. Summ. J. (Docket No. 62), Ex. B). Nevertheless, MIC has been defending Shawn, Ferdinand, and Pertie Chambers in the underlying action.

After disclaiming coverage, MIC initiated this declaratory judgment action against Shawn, Ferdinand, and Pertie Chambers, as well as Allen, seeking a declaration that it is not obligated to defend or indemnify Shawn or his parents in the underlying action because there is no coverage under the terms of the Policy. MIC also seeks to recover the costs incurred in defending the underlying action. Allen brings counterclaims against MIC, seeking a declaration that MIC has both a duty to defend and a duty to indemnify. (*See* Answer, Affirmative Defenses & Countercls. (Docket No. 37) 9-15). MIC now moves for summary judgment on both the duty to defend and the duty to indemnify, while Allen moves for partial summary judgment on the duty to defend issue alone. Shawn, appearing *pro se*, has not filed any papers in connection with the pending motions. Ferdinand and Pertie Chambers were served on or about September 9,

2015, but have not answered the Complaint or otherwise appeared in this action.  (*See* Docket Nos. 16, 17).

## LEGAL STANDARDS

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322.  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).  In ruling on a summary judgment motion, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where, as here, a party on each side moves for summary judgment, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "[T]he

court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).  Further, where, as here, a party who has appeared in the action "fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014) (internal quotation marks omitted).  In such circumstances, a court need not "write [an] elaborate essay[]" replete with "punctilious detail or slavish tracing of the claims issue by issue." *Id.* (internal quotation marks omitted).  But it must "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment," thereby creating "a record sufficient to allow an informed appellate review." *Id.*

## DISCUSSION

The parties agree that New York law governs interpretation of the Policy.  (*See* Pl.'s Mem. Law Supp. Its Mot. Summ. J. & Default J. (Docket No. 64) ("Pl.'s Mem.") 10-11; Def. Wanema Allen's Mem. Law Supp. Cross-Mot. Partial Summ. J. (Docket No. 68) ("Allen's Mem.") 5-6).  Under New York law, an insurer has two distinct duties to an insured: the duty to defend against a claim and the ultimate duty to indemnify against any judgment on that claim. *See Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985); *see also Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 51 (S.D.N.Y. 2015).  An insured's duty to defend is "exceedingly broad, which is in the interest of the insured." *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8 (1985).  An insurer is required to defend against a claim "whenever the complaint suggests a reasonable possibility of coverage, regardless of the merits of the action." *Town Plaza of Poughquag, LLC v. Hartford Ins. Co.*, —

F. Supp. 3d —, 2016 WL 1322440, at *4 (S.D.N.Y. Mar. 31, 2016).  If an insurer wishes to be relieved of its duty to defend on the basis of a policy exclusion, it carries "the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion."  *Stein v. N. Assur. Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015) (corrected summary order) (quoting *Frontier Insulation Contractors v. Merch. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)).  "[T]he insured has the burden of proving that the claimed loss falls within the scope of the policy but the insurer has the burden of proving that a policy exclusion applies." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 257 (S.D.N.Y. 2013), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013) (summary order); *see also Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 746 N.Y.S.2d 622, 625 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage.").

The duty to indemnify is narrower than the duty to defend: While "[t]he duty to defend is measured against the allegations of pleadings[,] the duty to pay is determined by the actual basis for the insured's liability to a third person."  *Atl. Cas. Ins. Co.*, 918 F. Supp. at 252 (internal quotation marks omitted).  Thus, it is entirely possible that an insurer has a duty to defend a claim even if it will not ultimately be responsible for indemnifying the insured against a judgment for that claim.  *See, e.g.*, *Seaboard Sur. Co. v. Gillette Co.*, 486 N.Y.S.2d 873, 876 (1984) ("The duty [to defend] is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable . . . .").  On the flip side, if an insurer is found to have no duty to defend, it necessarily means that it has no duty to indemnify.  *See, e.g.*, *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990) (observing that, because "the duty to defend is broader than the duty to indemnify[,] it is unnecessary to engage in a separate analysis

of [an insurer]'s independent claim that it has no duty to indemnify"); *Lewis & Stanzione v. St. Paul Fire & Marine Ins. Co.*, No. 13-CV-863 (GLS) (RFT), 2015 WL 3795780, at *5 (N.D.N.Y. June 17, 2015) (same).

In resolving disagreements regarding the terms of an insurance policy, New York courts determine as a "threshold" matter whether the contested term or provision is ambiguous. *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). A term is considered ambiguous under New York law if there is a "reasonable basis for a difference of opinion as to the meaning of the policy." *Fed. Ins. Co. v. Int'l Bus. Machs. Corp.*, 942 N.Y.S.2d 432, 434 (2012) (internal quotation marks omitted); *see also U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, — F.3d — , 2016 WL 2865578, at *3 (2d Cir. May 17, 2016). If a term is ambiguous, the general rule is that "[a]mbiguities in an insurance policy must be construed in favor of the insured." *Breed v. Ins. Co. of N. Am.*, 413 N.Y.S2d 352, 357 (1978); *see also McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994) ("[A]ny ambiguity in an insurance policy should be resolved in favor of the insured."). By contrast, a construction "favorable to the insurer will be sustained only if it is the 'only construction which may fairly be placed on the [words used].'" *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 252 (S.D.N.Y. 2003) (quoting *Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 842 (2d Cir. 1981)), *aff'd*, 108 F. App'x 663 (2d Cir. 2004). That rule "is especially applicable where . . . the ambiguity appears in a clause excluding coverage." *Breed*, 413 N.Y.S.2d at 357.

Here, MIC moves for summary judgment with respect to both its duty to defend and its duty to indemnify, arguing that the underlying action falls squarely within both the insured location exclusion and the rental exclusion. Allen cross-moves for summary judgment on her counterclaim for declaratory relief regarding MIC's duty to defend and her request for attorney's

7

fees and costs.[1]  Allen argues that the underlying action falls within the scope of the Policy, and contends that Plaintiff has failed to carry its "heavy burden" to demonstrate that an exclusion to the Policy precludes coverage.  The Court will address whether MIC has a duty to defend before turning to the duty to indemnify and Allen's request for attorney's fees.

### A. Duty To Defend Shawn Chambers

There is no dispute that the claims at issue in the underlying action fall within the scope of the Policy insofar as they are claims against Shawn for "damages because of bodily injury" resulting from an "occurrence."  (*See* Pl.'s Opp'n 1-2).  Instead, the parties' dispute over whether MIC has a duty to defend in the underlying suit — at least with respect to Shawn — depends on whether either the insured location exclusion or the rental exclusion applies.  (*Compare* Pl.'s Mem. 10-16, *with* Allen's Mem. 10-12).[2]  The answer to that question depends, in turn, on

---

[1]   MIC argues that Allen may not bring counterclaims against it because, under Section 3420 of the New York Insurance Law, an injured person may not ordinarily bring a declaratory judgment action against an insurer until he first obtains judgment against the tortfeasor.  *See Lang v. Hanover Ins. Co.*, 787 N.Y.S.2d 211, 213-15 (2004).  But it is well established that that requirement "is waived" where, as here, the injured party is named "as [a] defendant[] in the lawsuit."  *U.S. Underwriters Ins. Co. v. Zismopoulos*, No. 07-CV-4684 (CBA) (RLM), 2010 WL 1286221, at *2 (E.D.N.Y. Mar. 31, 2010); *see 3405 Putnam Realty Corp. v. Ins. Corp. of N.Y.*, 828 N.Y.S.2d 394, 394-95 (1st Dep't 2007); *Cataract Sports & Entm't Grp. LLC v. Essex Ins. Co.*, 874 N.Y.S.2d 345, 346 (1st Dep't 2009).

[2]   In the Complaint, MIC invokes Policy exclusions other than the insured location exclusion and the rental exclusion.  (*See, e.g.*, Policy at HO 00 03 04 91 at 13; Compl. ¶¶ 35-39 (alleging that no duty to defend exists because the Policy excludes coverage for injuries arising out of business pursuits of an insured); *id.* ¶¶ 46-49 (alleging that no duty to defend exists because the Policy excludes coverage for persons residing on any part of the "insured location" other than a "residence employee")).  In moving for summary judgment and — more significantly — in opposing Allen's cross-motion for summary judgment, however, MIC relies exclusively on the insured location exclusion and the rental exclusion.  (*See* Pl.'s Mem. 10-16; Pl.'s Opp'n 4-7).  Given that, and given that MIC has the burden of proving that an exclusion in the Policy defeats coverage, it has waived or abandoned any argument that other exclusions apply with respect to its duty to defend.  *See, e.g., Ryan v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 692 F.3d 162, 165 n.3 (2d Cir. 2012) ("[The insurer] has abandoned the argument that [a particular exclusion] absolves it of the duty to defend . . . .").

8

whether the Insured Property qualifies as a "residence premises" within the meaning of the Policy.  If it does, then the two exclusions would apply and MIC would not have a duty to defend (let alone a duty to indemnify); if it does not, then the exclusions would not apply, and MIC would have a duty to defend.  Needless to say, MIC argues that the Insured Property does not qualify as a "residence premises" on the ground that the plain terms of the Policy required Shawn to live there in order for it to so qualify.  More specifically, MIC contends that the definitions of "residence premises," considered together, unambiguously require the insured — that is, Shawn — to live in the "dwelling described in the Declaration" in order for that dwelling to be considered a "residence premises."  To reach that conclusion, Plaintiff proposes that there is only one definition of "residence premises" — the one-family dwelling "where you reside and which is shown as the 'residence premises' in the Declarations" — and that that core definition is then modified, according to Plaintiff's reading, to include two-, three-, and four-family dwellings by the remainder of the definition and the endorsement.

That is certainly a plausible reading of the Policy definition, but, in the Court's view, it is not the most plausible reading — and certainly not the only plausible reading.  That is, one could reasonably read the definition to contain three discrete definitions of the term "residence premises": (1) the one-family dwelling "where you reside and which is shown as the 'residence premises' in the Declarations"; (2) a two-family dwelling "where you reside in at least one of the family units and which is shown as the 'residence premises' in the Declarations"; and (3) the three- or four-family dwelling "described in the Declarations."  (Policy HO 00 03 04 91 at 1). That reading is supported by a number of considerations.  First, the fact that the definition begins with the phrase "residence premises means," and then provides that "residence premises *also* means" suggests that the various sub-parts of the definition are independent from one another.

9

Second, it would be strange to read the phrase "where you reside" in the first part as applying to the second and third parts given that the second part — concerning "a two family dwelling" — includes an independent residence requirement ("where you reside in at least one of the family units"). That language would be superfluous if, as MIC claims, the residency requirement in the first part already applied to the rest of the definition. *See, e.g.*, *Omni Berkshire Corp. v. Wells Fargo Bank, N.A.*, 307 F. Supp. 2d 534, 540 (S.D.N.Y. 2004) ("A contractual provision should be read so as to avoid rendering any part of the contract superfluous or without effect.").

Finally, notable differences between the language in the endorsement and the "two family dwelling" language suggest that the definition should be read as three distinct definitions. The "two family dwelling" language refers to "*a* two family dwelling where you reside . . . *and which is shown* as the 'residence premises' in the Declarations." The endorsement, on the other hand, refers simply to "*the* three or four family dwelling *described* in the Declarations," full stop. If, as MIC suggests, both the endorsement and the "two family dwelling" language were intended to serve the same purposes — namely, modifying the core definition of "residence premises" to include multi-family dwellings — one would expect those two provision to use the same language. And, of course, inclusion of the phrase "where you reside" in the two-family dwelling clause makes clear that MIC knew how to limit the definition to require residency; the absence of that phrase from the three- and four-family dwelling clause suggests that no such limitation was intended to apply. *See, e.g.*, *Int'l Fid. Ins. Co. v. Cty. Of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000) (observing that drafters of contracts "must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning"); *cf. Gomez-Perez v. Potter*, 553 U.S. 474, 497 (2008) ("Congress demonstrated that it knew how to

10

provide a retaliation cause of action when it wished to do so elsewhere in the very legislation cited, but failed explicitly to do so [here]." (internal quotations and alterations omitted))

The cases upon which MIC relies here do not persuade the Court that its reading of the "residence premises" definition is preferable, let alone that it is unambiguously correct. In many of those cases, the courts considered the ordinary meaning of the terms "reside" or "residence" — not the meaning of a defined term. *See Neary v. Tower Ins.*, 941 N.Y.S.2d 279, 280 (2d Dep't 2012) ("[T]he plaintiff failed to raise a triable issue of fact. Contrary to her contention, the term 'reside' or 'residence' is not ambiguous.").[3] In two cases — *Vela v. Tower Insurance Co. of New York*, 921 N.Y.S.2d 325, 326 (2d Dep't 2011), and *Marshall v. Tower Insurance Co. of New York*, 845 N.Y.S.2d 90, 91 (2d Dep't 2007) — the definition of "residence premises" at issue included language that unambiguously required the insured to reside at the address shown as the "residence premises." *See Vela*, 921 N.Y.S.2d at 326 ("The policy contained a 'residence premises' provision, pursuant to which coverage was provided for a one- or two-family dwelling 'where you [meaning the insured] reside and which is shown as the residence premises in the Declarations.'"); *Marshall*, 845 N.Y.S.2d at 91 ("The term 'residence premises' is defined as follows: '8. Residence premises means: a. The one family dwelling, other structures, and grounds; or b. That part of any other building; where you reside and which is shown as the residence premises in the Declarations.'"). Only one decision — an unpublished trial court opinion, *Castlepoint Ins. Co. v. Persaud*, No. 106489/2010, 2011 WL 11166183 (N.Y. Sup. Ct.

---

[3] These cases are inapposite because where, as here, "a term is defined in the policy, the Court is bound by the policy definition" regardless of the ordinary meaning of that term. *Unger v. Liberty Mut. Ins. Co.*, 849 F. Supp. 839, 846 (E.D.N.Y. 1994) (internal quotation marks omitted); *see also, e.g.*, *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 450 (E.D.N.Y. 2010) (noting that a term is "afforded its ordinary meaning" only where that "term is not defined in the policy").

11

July 27, 2011) — involved the same language as the language in this case. But that opinion relied exclusively on *Vela* and *Marshall* without acknowledging the fact that neither of those cases involved language comparable to the endorsement at issue here. *Id.* at *2-3. For the reasons discussed above, this Court finds that that language, at a minimum, inserts ambiguity into the definition of "residence premises," and therefore declines to follow *Persaud.*

MIC alternatively argues that the language in the endorsement unambiguously requires the insured to live in the listed dwelling because the endorsement provides that "[a]ll other provisions of this policy apply." (*See* Pl.'s Mem. 13-14). But that boilerplate qualification does not carry the weight MIC places on it. The fact that the other two definitions of "residence premises" contain language requiring the insured to live in the premises in question does not mean that "the fact that the insured must reside at the 'residence premises'" is a freestanding "provision of the policy." (*See* Pl.'s Reply 1-2). Of course, MIC could have drafted such a provision and included it in the Policy — providing, for example, that "no dwelling shall be considered a 'residence premises' unless the insured resides there." Having failed to do so, however, MIC cannot cobble such a requirement together from a shared feature of the other two definitions of "residence premises." For all of those reasons, the Court concludes that the definition of "residence premises" is, at a minimum, ambiguous, and thus must be construed in favor of the insured. It follows that MIC has not carried its "heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within" any exclusion contained in the Policy. *Stein*, 617 F. App'x at 30 (internal quotation marks omitted). MIC's motion for summary judgment with respect to the duty to defend is therefore denied as to Shawn, and Allen's corresponding cross-motion is granted.

A different result is required, however, with respect to MIC's motion as to Ferdinand and Pertie Chambers, who are not named insureds and have yet to enter a notice of appearance in this action despite having been served.  (*See* MIC SOF ¶¶ 19-20; Allen Resp. SOF ¶¶ 19-20).  First, because Ferdinand and Pertie Chambers have failed to appear, MIC is entitled to default judgment against them.  *See* Fed. R. Civ. P. 55.  (*See* Docket No. 14).  Second, and in any event, MIC is entitled to summary judgment against them.  Although the Policy defines "insured" to include "residents of [the insured's] household" who are "relatives" of the insured (*see* MIC SOF ¶ 22), it is undisputed that Ferdinand and Pertie Chambers did not live with Shawn on the date of the underlying incident (*id.* ¶¶ 12, 26-28).  Thus, they are not insureds under the Policy and MIC has no duty to defend them.  *See Allstate Ins. Co. v. Gominiak*, 537 N.Y.S.2d 411, 411-12 (4th Dep't 1989).  Allen counters that entering judgment against Ferdinand and Pertie Chambers serves no purpose because the duty to defend Shawn Chambers requires MIC to "defend the entire action." *Fieldston Prop. Owners Ass'n Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264-65 (2011) (internal quotation marks omitted).  But that rule applies only to other *claims* asserted against the insured, not to other *parties* named as defendants in the same action.  *See, e.g.*, *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002) (holding that it is immaterial "that the complaint against the insured asserts additional *claims* which fall outside the policy's general coverage or within its exclusory provisions" (emphasis added) (internal quotation marks omitted)); *see also Fieldston*, 920 N.Y.S.2d at 767 ("An insurer's duty to defend is liberally construed . . . 'in order to ensure [an] adequate . . . defense of [the] *insured*'" (alterations in original) (emphasis added)).  MIC does not assume an independent duty to defend Ferdinand and Pertie Chambers by virtue of the fact that they were named as defendants in the underlying action alongside Shawn.  Because Pertie and Ferdinand Chambers have not appeared

13

in this action, and because the undisputed facts demonstrate that they are not insureds under the Policy, MIC's motion for summary judgment or, in the alternative, default judgment against them is granted.

## B. Attorney's Fees and Costs

As part of her cross-motion for summary judgment with respect to the duty to defend, Allen asks the Court to award her damages to cover the attorneys' fees and costs that she incurred in litigating these motions. In doing so, she relies on the rule, under New York law, that an insurer's duty to defend an insured reaches to all actions arising out of a covered occurrence, including any actions brought by the insurer itself. Thus, where an insured "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations," the insurer may be required to cover the insured's legal expenses. *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979). The Second Circuit has interpreted that rule narrowly, however, holding that it applies only "when a policyholder has been cast in a defensive posture by its insurer in a dispute over the insurer's duty to defend." *Employers Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824 (2d Cir. 1996) (per curiam); *see also Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005) (per curiam).

Here, of course, Allen is not the insured. Nevertheless, she contends that Shawn, who is an insured (but proceeding *pro se*), "will enjoy the benefits" of her participation in this action and that the "fundamental purpose" behind the *Mighty Midgets* rule would be furthered by requiring MIC to pay for *her* attorney's fees. (Allen Reply 7-8). The Court disagrees. The normal rule in this country is that a litigant may not recover damages for amounts expended in the successful prosecution or defense of its rights. *See Alyeska Pipeline Co v. Wilderness Soc.*, 421 U.S. 240, 247-59 (1975). The *Mighty Midgets* line of cases creates a narrow exception to

that rule derived directly from the contractual relationship between the insurer and the insured. *See Liberty Surplus*, 420 F.3d at 67 ("The reasoning behind the *Mighty Midgets* exception is that an insurer's duty to defend extends to any action arising out of a covered event, including an action brought by the insurer to free itself from covering the event."). No such relationship exists between MIC and Allen, and Allen points to no case expanding the rule to cover parties who merely litigate on the same side of the "*v.*" as an insured. Allen's request for an award of attorneys' fees and costs is thus denied.

## C. Duty To Indemnify

That leaves only MIC's motion for summary judgment with respect to its duty to indemnify.[4] Given that MIC has no duty to defend with respect to Ferdinand and Pertie Chambers, it is entitled to summary judgment with respect to the duty to indemnify them. *See, e.g.*, *EAD Metallurgical*, 905 F.2d at 11. But the question of whether MIC has a duty to indemnify Shawn is not yet ripe, as the duty to indemnify "is determined by the actual basis for the insured's liability to a third person." *Atl. Cas. Ins. Co.*, 918 F. Supp. 2d at 252. Here, no judgment has yet been entered against Shawn in the underlying action and, while MIC may have waived or abandoned exclusions other than the insured premises exclusion and the rental exclusion for purposes of its duty to defend by not raising them in opposition to Allen's motion for summary judgment, *see supra* note 2, the same cannot be said for the duty to indemnify, as

---

[4] MIC, apparently misunderstanding the difference between a motion and opposition to a motion, argues that the issue of indemnification and coverage was conceded by Allen because she did not move for summary judgment on that issue. (Pl.'s Opp'n 1). But Allen's motion for partial summary judgment clearly contests the arguments raised by Plaintiff in its motion for summary judgment. (*Compare* Allen's Mem. 10-12, *with* Pl.'s Opp'n 1 ("[A]ll parties are in agreement that there is no coverage under MIC's policy.")). And in any event, contrary to MIC's suggestion, Allen was not required to seek summary judgment on the issue of indemnification in order to oppose MIC's motion for summary judgment on the same.

MIC was under no obligation to affirmatively move for summary judgment on all possible grounds.[5] In the Court's view, therefore, it makes more sense to await judgment in the underlying case than to predict what "the actual basis" of any liability might be. Accordingly, MIC's motion for summary judgment with respect to its duty to indemnify Shawn is denied without prejudice to renewal after completion of the underlying action. *See, e.g.*, *Travelers Property Cas. Corp. v. Winterthur Int'l.*, No. 02-CV-2406, 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002) ("A decision by this Court as to [the insurer's] duty to indemnify would be both hypothetical and speculative, and might be rendered moot by the result of [the underlying] suit."); *Statt v. Am Home Assur. Co.*, 595 N.Y.S.2d 700, 701 (4th Dep't 1993) ("This declaratory judgment action is premature. The extent of [the insurer's] duty to indemnify must necessarily depend on the resolution of an issue that, if it arises, will be decided in the underlying action."); *Francesco v. Investors Ins. Co. of Am.*, 511 N.Y.S.2d 302, 303 (2d Dep't 1987) (reversing grant of summary judgment on issue of indemnification because judgment in underlying action had not yet been entered).

## CONCLUSION

For the reasons stated above, MIC's motion for summary judgment is GRANTED in part and DENIED in part, and Allen's cross-motion for partial summary judgment is GRANTED in part and DENIED in part. In particular, MIC's motion for summary judgment against Shawn is denied (without prejudice as to its duty to indemnify claim), while its motion against Ferdinand

---

[5] It is reasonable to assume that if MIC had a strong argument based on any other exclusion, it would have made it at this stage. But MIC cannot be said to have waived or abandoned the other exclusions alleged in the Complaint for purposes of its duty to indemnify. Accordingly, the Court cannot say that its duty to indemnify claims fail as a matter of law.

and Pertie Chambers is granted. Allen's cross-motion for summary judgment as to MIC's duty to defend Shawn is granted, but Allen's request for attorneys' fees and costs is denied.

MIC shall serve a copy of this Opinion and Order on Pertie and Ferdinand Chambers and promptly file proof of such service on the docket.

The Clerk of Court is directed to terminate Docket Nos. 61, 67, and 82, to enter judgment against Ferdinand and Pertie Chambers, and to mail a copy of this Opinion and Order to Shawn Chambers. Furthermore, seeing no reason to keep this case open pending resolution of the underlying lawsuit, when the question of whether MIC has a duty to indemnify would become ripe, the Court directs the Clerk of Court to administratively close the case without prejudice to any party seeking to reopen it within thirty days of entry of judgment in the underlying lawsuit. To be clear, that requires any party seeking to reopen the case to make a letter motion to that effect no later than thirty days after entry of judgment in the underlying lawsuit.

SO ORDERED.

Date: June 8, 2016
New York, New York

_____
JESSE M. FURMAN
United States District Judge